Slip Op. 17-148

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SOLARWORLD AMERICAS, INC. and GOAL ZERO, LLC,** | |
|     Plaintiff and Consolidated Plaintiff, | |
| v. | |
| **UNITED STATES,** | Before: Claire R. Kelly, Judge |
|     Defendant, | Consol. Court No. 15-00231 |
| and | PUBLIC VERSION |
| **YINGLI GREEN ENERGY HOLDING CO., LTD. ET AL.,** | |
|     Defendant-Intervenors and Consolidated Defendant-Intervenor. | |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's remand determination in the first administrative review of the antidumping duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China.]

Dated: October 31, 2017

Timothy C. Brightbill, Laura El-Sabaawi, Maureen Elizabeth Thorson, Tessa Victoria Capeloto, Usha Neelakantan, and Adam Milan Teslik, Wiley Rein, LLP, of Washington, DC, for SolarWorld Americas, Inc.

John Marshall Gurley, Nancy Aileen Noonan, Aman Kakar, and Diana Dimitriuc-Quaia, Arent Fox LLP, of Washington, DC, for Goal Zero, LLC.

Tara Kathleen Hogan, Assistant Director, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, of Washington, DC, for defendant. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Mercedes C. Morno, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement & Compliance.

Neil R. Ellis, Richard L.A. Weiner, Rajib Pal, Shawn Michael Higgins, and Justin Ross Becker. Sidley Austin, LLP, of Washington, DC, for Yingli Green Energy Holding Co., Ltd., Yingli Green Energy Americas, Inc., Yingli Energy (China) Co., Ltd., Baoding Tianwei Yingli New Energy Resources Co., Ltd., Tianjin Yingli New Energy Resources Co., Ltd., Hengshui Yingli New Energy Resources Co., Ltd., Lixian Yingli New Energy Resources Co., Ltd., Baoding Jiasheng Photovoltaic Technology Co., Ltd., Beijing Tianneng Yingli New Energy Resources Co., Ltd., Hainan Yingli New Energy Resources Co., Ltd., Jinko Solar Import & Export Co., Ltd., JinkoSolar International Limited, and Jinko Solar Co., Ltd.

Robert George Gosselink, Jarrod Mark Goldfeder, and Jonathan Michael Freed, Trade Pacific, PLLC, of Washington, DC, for Changzhou Trina Solar Energy Co., Ltd. and Trina Solar (Changzhou) Science & Technology Co., Ltd.

Kelly, Judge: Before the court for review is the U.S. Department of Commerce's ("Commerce") remand determination in the first administrative review of the antidumping duty ("ADD") order covering crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China ("China" or "the PRC"), filed pursuant to the court's order in SolarWorld Americas, Inc. v. United States, 41 CIT __, __, 234 F. Supp. 3d 1286, 1314 (2017). See Final Results of Remand Redetermination, Sept. 11, 2017, ECF No. 143-1 ("Remand Results"). For the reasons that follow, Commerce has complied with the court's order in SolarWorld Americas, Inc., 41 CIT at __, 234 F. Supp. 3d at 1314, and the Remand Results are sustained.

# BACKGROUND

The court assumes familiarity with the facts of this case as discussed in the previous opinion, see SolarWorld Americas, Inc., 41 CIT at __, 234 F. Supp. 3d at 1292–94, and here recounts the facts relevant to the court's review of the Remand Results.

Commerce selected Yingli Energy (China) Company Limited and Wuxi Suntech Power Co., Ltd. ("Suntech") as mandatory respondents in this review. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the [PRC], 80 Fed. Reg. 40,998, 40,998 (Dep't Commerce July 14, 2015) (final results of ADD administrative review and final determination of no shipments; 2012–2013) and accompanying Decision Memorandum for the Final Results of the 2012–2013 [ADD] Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the [PRC], A-570-979, at 1, (July 7, 2015), ECF No. 20-5 ("Final Decision Memo").  For purposes of calculating Suntech's dumping margin, Commerce included, as constructed export price ("CEP") sales, sales of subject merchandise between Suntech's U.S. affiliate Suntech America and an unaffiliated purchaser, using the shipment date as the date of sale. See Final Decision Memo at 91–94.  Acknowledging that "invoice date is normally the presumptive date of sale," Commerce justified using the date of shipment here by reference to Suntech America's contracts for the sale of solar modules that are subject to change and to its findings in past proceedings that contracts within the solar industry are regularly subject to change. Id. at 93–94.

SolarWorld Americas, Inc. ("SolarWorld") commenced this action,[1] see Summons, Aug. 12, 2015, ECF No. 1, challenging several aspects of the final determination.[2] See [SolarWorld] Mem. Supp. Rule 56.2 Mot. J. Agency R. 13–45, Apr. 15, 2016, ECF No. 62. SolarWorld challenged, inter alia, Commerce's decision to use the shipment date as the date of sale for Suntech's U.S. sales, contending that Commerce should have instead used the date of contract as the date of sale. See id. at 33–39. SolarWorld also contended that Commerce incorrectly based its determination that Suntech America's sales contracts were subject to change up to the date of shipment on terms in contracts not included as CEP sales. Id. at 35–36. Defendant responded that Commerce's determination was supported by record evidence showing that the material terms of Suntech America's sales contracts were subject to change up to the date of shipment, consistent with the contract pricing practices of the solar industry and of Suntech. See Def.'s Mem. Opp'n Pls.' Rule 56.2 Mots. J. Agency R. 45–47, Dec. 16, 2016, ECF No. 81.

Sustaining the final determination in all other respects, the court remanded to Commerce for further explanation or reconsideration of the agency's determination to use

---

[1] This action is consolidated with an action filed by Goal Zero, LLC, challenging different aspects of the same determination. See Order, Nov. 3, 2015, ECF No. 39. All aspects of the final determination challenged by Goal Zero, LLC were sustained in the prior opinion. See SolarWorld Americas, Inc., 41 CIT at __, 234 F. Supp. 3d at 1294–1303, 1314.

[2] Specifically, SolarWorld challenged three other aspects of Commerce's final determination, namely Commerce's: 1) selection of surrogate value import data for two inputs (steel frames and semi-finished polysilicon ingots and blocks) used in the production of subject merchandise, see [SolarWorld] Mem. Supp. Rule 56.2 Mot. J. Agency R. 14–24, Apr. 15, 2016, ECF No. 62; 2) decision to include a line item identified as "other income" in its surrogate financial ratio calculation, see id. at 42–44; and 3) use of factors of production usage data from Suntech and certain tollers. See id. at 39–42.

the date of shipment as the date of sale for Suntech America's CEP sales.[3] SolarWorld Americas, Inc., 41 CIT at __, 234 F. Supp. 3d at 1314. The court determined that Commerce's use of the shipment date as date of sale was unsupported by substantial evidence because Commerce based its conclusion that key terms of sale were subject to change on contracts for the sale of solar modules not related to the Suntech America sales included as CEP sales. See id., 41 CIT at __, 234 F. Supp. 3d at 1310–11. The court ordered that, on remand, Commerce must explain what record evidence supports a determination that the key terms of the sales between Suntech's affiliated U.S. seller Suntech America and the unaffiliated purchaser were subject to change after the contract date, or must reconsider its determination. See id., 41 CIT at __, __, 234 F. Supp. 3d at 1310, 1314.

Commerce published the remand determination on September 11, 2017. No parties commented on the Remand Results, and Defendant requested that the court sustain the Remand Results and enter judgment on its behalf. Def.'s Req. Entry J., Oct. 16, 2017, ECF No. 147.

---

[3] Specifically, the court sustained Commerce's application of the China-wide AFA rate of 249.96 percent to ERA Solar as supported by substantial evidence and in accordance with law; Commerce's surrogate value data selections to value solar frames and semi-finished silicon ingots and blocks; Commerce's inclusion of the "other income" line item in its surrogate financial profit calculation; the inclusion of sales to Suntech as CEP sales; and Commerce's acceptance of FOP usage data from Suntech and certain tollers as facts available. See SolarWorld Americas, Inc., 41 CIT at __, 234 F. Supp. 3d at 1314.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012)[4] and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an administrative review of an antidumping duty order. "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

The court ordered that, on remand, Commerce must explain what record evidence supports a determination that the key terms of the sales between Suntech's affiliated U.S. seller and the unaffiliated purchaser were subject to change after the contract date, or must reconsider its determination. SolarWorld Americas, Inc., 41 CIT at __, __, 234 F. Supp. 3d at 1310, 1314. On remand, Commerce adequately explained its determination that the key terms of sale in the relevant contracts were subject to change, and has therefore complied with the court's order.

---

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Commerce determines a respondent's dumping margin by calculating "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." 19 U.S.C. § 1677(35)(A). The statute provides that constructed export price is "the price at which the subject merchandise is first sold (or agreed to be sold) before or after the date of importation by or for the account of the producer or exporter . . . or by a seller affiliated with the producer or exporter, to [an unaffiliated] purchaser . . ." Id. § 1677a(b). The statute does not define when a product is deemed sold, nor does it define how Commerce determines date of sale for purposes of determining which sales should be included in calculating constructed export price. Commerce's regulations provide that the agency "normally will use the date of invoice, as recorded in the exporter or producer's records kept in the ordinary course of business" as the date of sale of subject merchandise. 19 C.F.R. § 351.401(i) (2014).[5] However, Commerce has discretion to use an alternative date if it determines that "a different date better reflects the date on which the exporter or producer establishes the material terms of sale." Id.

Here, Commerce determined that a date other than the date of invoice better reflects the date that the material terms of sale were established. Remand Results 10. On remand, Commerce further explained its decision to use the shipment date as the date of sale for Suntech America's CEP sales of solar modules to the unaffiliated purchaser. See id. at 6–10. On remand, Commerce relied upon the actual contract at

---

[5] Further citation to Title 19 of the Code of Federal Regulations is to the 2014 edition.

Consol. Court No. 15-00231 Page 8
**PUBLIC VERSION**

issue between Suntech Americas and the unaffiliated purchaser, which appears to relate to the subject merchandise. See id. at 7. Commerce compared the original contract and revised contract, original and revised delivery schedules, and the ultimate U.S. sales data, and found that "meaningful differences" existed between the ultimate delivered merchandise and certain terms in the contracts and delivery schedules. See id. at 7–9. Commerce found that these differences "provide a basis to conclude that the material terms of sale were subject to ongoing revision," id. at 9, and that these documents indicate that key terms[6] in Suntech America's sales contracts were subject to change, [[

]], after the contracts were executed.[7] Id. at 7–10. Finding that this record evidence demonstrates that the terms of sale changed several times between contract and delivery, Commerce determined that using the date of shipment as the date of sale would most accurately reflect the date on which the material terms of sale were established. See id.

This determination is supported by substantial evidence. By comparing the original contract, revised contract, original delivery schedule, revised delivery schedule, and the ultimate sales data, Commerce confirmed that the terms of the sales were modified until delivery. Remand Results 7–10. Commerce cited specific documents in the record that it compared to reach this determination, see id., and these documents support a finding

---

[6] Namely, Commerce found evidence in the record that the [[       ]] and [[       ]] terms changed from the date of initial contract several times until the merchandise was delivered. See Remand Results 7–10.

[7] Commerce stated that "record evidence indicates that the key terms of the [[       ]] contract that covered the CEP sales at issue were subject to change, [[       ]], after the date of the contract." Remand Results 2.

that key terms[8] of the contract changed prior to delivery. It was reasonable for Commerce to determine from the changes in these documents that the terms of sale were not final until the merchandise was shipped, and to subsequently determine, in keeping with its regulations, that a date other than the invoice date "better reflects the date on which the exporter or producer establishes the material terms of sale." 19 C.F.R. § 351.401(i). The determination is supported by substantial evidence and is a reasonable exercise of Commerce's discretion pursuant to the agency's regulations. See id.

Commerce has complied with the court's order. No party challenges Commerce's Remand Results, and the Remand Results are sustained.

## CONCLUSION

In accordance with the foregoing, the Remand Results comply with the court's order in SolarWorld Americas, Inc., 41 CIT at __, 234 F. Supp. 3d at 1314, and are therefore sustained. Judgment will enter accordingly.

    /s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: October 31, 2017
    New York, New York

---

[8] Again, Commerce notes that the terms that changed included the [[    ]] and date of [[    ]] of the goods. See Remand Results 7–10.